**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1587-15T3

S.R.,

    Plaintiff-Respondent

v.

M.D.,

    Defendant-Appellant,

_____

        Submitted September 6, 2017 — Decided October 19, 2017

        Before Judges Alvarez and Gooden Brown.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0894-16.

        James E. Young, Jr., attorney for appellant.

        The Ibrahim Law Firm, attorneys for respondent (Thomas Kim, on the brief).

PER CURIAM

    Defendant appeals from an October 27, 2015 final restraining order (FRO) entered against him in favor of plaintiff, pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

We summarize the relevant facts. Plaintiff and defendant were married in Amman, Jordan, in February 2012. Fraternal twins were born of the marriage in June 2013. That same year, the parties separated. As a United States citizen, plaintiff resided in the United States with the children, while defendant would travel between the United States and Jordan. On October 2, 2015, plaintiff filed a complaint against defendant seeking injunctive relief under the PDVA. Plaintiff alleged that on September 1 and 25, 2015, defendant committed acts of domestic violence, specifically harassment under N.J.S.A. 2C:33-4, by threatening her on the telephone and sending her threatening messages via a mutual friend as well as text messages at all hours of the day and night.

In the amended complaint, plaintiff alleged defendant called her "a whore" on multiple occasions, and threatened to "take the children" and "put [plaintiff's] citizenship in jeopardy by telling welfare that she [was] making fraudulent claims." Plaintiff also alleged defendant threatened "that he [was] coming for [her] . . . because [she] found proof that [defendant] [had] another wife in Jordan and . . . took the information to immigration[.]" As a result, "[defendant's] residency [was] revoked and immigration [was] looking into the report."

In her complaint, plaintiff also recounted a prior history of domestic violence involving similar threats and name calling

spanning a period of time from March 2013 to June 2015. In addition, plaintiff described in the complaint a March 5, 2013 incident, during which defendant allegedly held a knife to her chest while she was pregnant and threatened to kill or injure her if she did "not continue the process for [defendant] to get a green card[;]" a July 2014 incident during which defendant allegedly "swerved his car toward where [plaintiff] was standing with a classmate[;]" and a May 2015 incident during which defendant allegedly threatened to rape her.

Defendant was served with the complaint on October 14, 2015. Almost two weeks later, on October 27, 2015, the Family Part judge conducted a final hearing. At the hearing, plaintiff was represented by counsel, while defendant was self-represented. Arabic interpreters assisted both parties throughout the proceedings. Before the hearing began, the judge explained the proceedings to defendant. When the judge asked defendant if he understood, the following colloquy ensued:

> [DEFENDANT]: I just want the [c]ourt to give me my right to defend myself, because I cannot bring attorney.
>
> THE COURT: Well you will certainly have the right to present whatever evidence, documents, and whatever you have . . . for your case.
>
> [DEFENDANT]: Can you be patient with me?
>
> THE COURT: Yes.

During the hearing, plaintiff testified that, as a United States citizen, she was helping defendant obtain his United States citizenship. However, in September 2015, after she discovered defendant was still married to his first wife and reported him to immigration, he sent a message to her through a mutual friend that he was "going to come to the [United States] and destroy [her] life, and kill [her] for that." Defendant repeated these threats over the telephone while plaintiff's sister was visiting her.

Plaintiff described another incident that occurred after a child support hearing. Plaintiff believed defendant had tampered with her car. When she questioned him, he spat on her and called her a "bitch" in Arabic. In yet another incident, while plaintiff was at the mall with her sister, defendant threatened to rape her and claimed that her country could not "protect [her] from [him]." Plaintiff also testified that defendant repeatedly used foul language and insulted her in public. Plaintiff stated she was afraid of defendant and believed his threats to injure or kill her because she was "nothing to him."

Plaintiff's classmate, neighbor, and sister testified on plaintiff's behalf. Plaintiff's classmate testified that, in July 2014, she observed defendant "walking around [plaintiff's] car" and heard defendant call plaintiff a derogatory name. Plaintiff's

A-1587-15T3

neighbor testified that, over the past three years, she had witnessed plaintiff and defendant engage in verbal altercations outside plaintiff's house. Plaintiff's sister testified that defendant threatened to rape plaintiff while they were all at the mall in June 2015. The following month, she overheard defendant threaten to destroy plaintiff's "home" and "life" during a telephone conversation.

The court afforded defendant an opportunity to cross-examine plaintiff and her witnesses. During his case, defendant denied threatening plaintiff but admitted to "yelling" at her on one occasion, which prompted her to call the police. Defendant explained they were "yelling at each other" because plaintiff was late picking him up from the airport. Defendant testified that he divorced his first wife in 2012, before he married plaintiff. However, on cross-examination, he acknowledged a document that indicated defendant had divorced his first wife a week before marrying plaintiff, and then re-married his ex-wife in November of 2012, nine months after marrying plaintiff.

In an oral opinion rendered immediately after the hearing, the judge determined that jurisdiction existed under the PDVA and that the entry of a FRO was justified. The judge found the testimony of plaintiff and her witnesses "to be particularly believable[.]" The judge noted that plaintiff "was visibly

emotional[,]" and "forthright in her recollections[.]" On the other hand, defendant's testimony "was ra[m]bling at best[,]" and defendant "offered certain explanations for things that didn't seem germane to the proceedings[.]" The court determined:

> [O]n the main points[,] I find that you were married, . . . or certainly believed to be married based on the documentation presented to another woman at the same time you were married to [plaintiff]. And it makes sense to this [c]ourt, certainly from a very practical standpoint that when that information was found out, and you were potentially subjected to some sort of immigration scrutiny, that those threats were made as a result of that information being found out.

Applying the two-prong analysis from Silver v. Silver, 387 N.J. Super. 112 (2006), the judge found "by a preponderance of the evidence" that defendant committed the predicate act of harassment, pursuant to N.J.S.A. 2C:33-4. After considering the prior history of rape threats and name calling, "as well as the main complaint from September [2015,]" the judge determined that, based on "the disputes, altercations, [and] arguments that have occurred, . . . it is more probable than not that [defendant] threatened [plaintiff] in the manner she testified to[,] [t]hat [defendant] would destroy her life, [he] would kill her." The judge found that "whether [defendant] fully intended to do that or not is an open question perhaps[,]" but "those statements were

made with an intention to harass, annoy, or irritate, or disturb [plaintiff]." The judge concluded it was "very apparent . . . that there is a continuing need to protect [plaintiff] from any further acts of [d]omestic [v]iolence." This appeal followed.

On appeal, defendant argues that he "was not adequately informed of the allegations against him and thus was denied his right to due process." He asserts "[t]he application . . . alleged text messages and telephone calls" that were "not the subject of the testimony of the [plaintiff and plaintiff's] witnesses." We acknowledge that, during the hearing, there was no testimony of threats communicated by text messages as contained in the complaint. However, we reject defendant's implication that the testimony about defendant's threats to plaintiff communicated by telephone and in person were not sufficient to support the judge's determination.

Pursuant to Silver, supra, 387 N.J. Super. at 125-26, when determining whether to grant a FRO under the PDVA, the judge must make two determinations. Under the first Silver prong, the judge "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. [2C:25-19(a)] has occurred." Silver, supra, 387 N.J. Super. at 125.

7

> Although a court is not obligated to find a past history of abuse before determining that an act of domestic violence has been committed in a particular situation, a court must at least consider that factor in the course of its analysis. Therefore, not only may one sufficiently egregious action constitute domestic violence under the Act, even with no history of abuse between the parties, but a court may also determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of [abuse] in the parties' past.
>
> [Cesare v. Cesare, 154 N.J. 394, 402 (1998) (emphasis omitted).]

Under the second Silver prong, a judge must also determine whether a restraining order is required to protect the plaintiff from future acts or threats of violence. Silver, supra, 387 N.J. Super. at 126-27. Although the latter determination "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. [2C:25-29(a)(1) to -29(a)(6)], to protect the victim from an immediate danger or to prevent further abuse." A.M.C. v. P.B., 447 N.J. Super. 402, 414 (App. Div. 2016) (emphasis omitted) (quoting Silver, supra, 387 N.J. Super. at 127).

Harassment is one of the predicate acts set forth in N.J.S.A. 2C:25-19(a). A person commits the offense of harassment if, "with purpose to harass another," he or she

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a) to (c).]

Harassment requires that the defendant act with the purpose of harassing the victim, and judges must be mindful that "a party may mask an intent to harass with what could otherwise be an innocent act." J.D. v. M.D.F., 207 N.J. 458, 488 (2011). "A finding of a purpose to harass may be inferred from the evidence presented[,]" and a judge may use "[c]ommon sense and experience" to determine a defendant's intent. State v. Hoffman, 149 N.J. 564, 577 (1997). To that end, a judge must consider the totality of the circumstances to determine whether an act of harassment, in the context of domestic violence, has occurred. Id. at 584-85.

Factual findings of the trial court should not be disturbed unless they "are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to

A-1587-15T3

offend the interests of justice." Cesare, supra, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference to the trial court's factual findings "is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Furthermore, deference is accorded "[b]ecause of the family courts' special jurisdiction and expertise in family matters[.]" Id. at 413. Reversal is warranted only "if the court ignores applicable standards[.]" Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008).

We are satisfied there is sufficient credible evidence in the record to support the judge's finding that defendant committed acts of harassment, as defined in N.J.S.A. 2C:33-4, by repeatedly making threats and derogatory comments with purpose to alarm or seriously annoy plaintiff. We are also convinced that the record supports the judge's determination that a FRO was required to protect plaintiff and prevent further acts of harassment.

Defendant's argument that he was not adequately informed of the allegations is belied by the record. Although the testimony at the hearing did not reflect all the incidents alleged in the complaint, there was no testimony elicited at the hearing or considered by the judge that was not contained in the complaint.

Indeed, when plaintiff referred to a 2012 incident during her direct examination, her attorney immediately interrupted her and cautioned her to "talk about only what's in your complaint, because he's only here to answer that which you put [in your complaint]."

Defendant also argues the "failure to inform [him] of the possible grave ramifications of the entry of a final order amounts to a denial of due process." Both the Fourteenth Amendment to the United States Constitution and Article I, paragraph 1, of the New Jersey Constitution protect the due process rights of defendants in actions brought under the PDVA. See H.E.S. v. J.C.S., 175 N.J. 309, 321-22 (2003). In a domestic violence case, due process requires, at a minimum, "notice defining the issues and an adequate opportunity to prepare and respond." Ibid. (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). A domestic violence defendant is also entitled to have the opportunity to cross-examine and call witnesses. Peterson v. Peterson, 374 N.J. Super. 116, 125 (App. Div. 2005). A domestic violence defendant does not have a constitutional right to counsel, however, D.N. v. K.M., 429 N.J. Super. 592, 600-06 (App. Div. 2013), but should be afforded "the opportunity to seek legal representation, if requested." Id. at 606 (citing Franklin v. Sloskey, 385 N.J. Super. 534, 540-41 (App. Div. 2006)). We are

11

satisfied from our review of the record that the hearing below complied with the due process requirements outlined above.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION