RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5061-15T1

M.Y.,1

 Plaintiff-Respondent,

v.

G.C.,

 Defendant-Appellant.

________________________________________________________________

 Submitted September 20, 2017 – Decided October 30, 2017

 Before Judges Haas and Rothstadt.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Bergen County,
 Docket No. FV-02-1627-16.

 Matthew Jeon, attorney for appellant.

 E. Sandra Choi, attorney for respondent.

PER CURIAM

 Defendant G. C. appeals from the Family Part's June 7, 2016

final restraining order ("FRO") that the court entered against him

1
 Pursuant to Rule 1:38-3(d)(9), we use initials to protect the
parties' confidentiality.
pursuant to the Prevention of Domestic Violence Act ("PDVA"),

N.J.S.A 2C:25-17 to -35, and in favor of his former wife, plaintiff

M. Y. The trial judge found defendant committed the predicate act

of harassment, N.J.S.A. 2C:33-4, by engaging in a pattern of

conduct against plaintiff with the intention of annoying and

alarming her, and that an FRO was needed to protect plaintiff. On

appeal, defendant argues the trial court failed to properly apply

the analysis required under Silver v. Silver, 387 N.J. Super. 112

(App. Div. 2006). We disagree and affirm.

 The facts developed at the final hearing in this matter are

summarized as follows. Plaintiff and defendant were married in

October 2011 and divorced almost five years later. Soon after

plaintiff filed for divorce in March 2016, she also filed a

complaint seeking a restraining order against defendant. That

complaint alleged defendant harassed plaintiff by repeatedly

calling her and texting her "threatening and harassing" messages

beginning on March 3, 2016 and continuing for approximately four

days.

 At the ensuing final hearing, it was undisputed by the parties

that there was no previous history of domestic violence or

harassment by defendant before these incidents. Defendant also

conceded that he sent all of the subject text messages and that

he repeatedly tried to communicate with plaintiff. According to

 2 A-5061-15T1
defendant, the communications were only made in an attempt to

discuss with plaintiff her reasons for seeking the divorce and so

that he could get closure.

 Plaintiff testified that over the course of four days after

she filed for divorce, defendant sent her hundreds of text messages

throughout the day and night. Initially, defendant's texts focused

on the divorce and defendant wanting to arrange a meeting to

discuss the divorce. When plaintiff expressed reluctance to meet,

defendant began texting plaintiff nude photos of herself that

defendant had stored on his phone, as well as photos of his bloody

stools. He threatened to disclose the photos to plaintiff's family

and her fellow church members, and made threatening statements

about causing harm to plaintiff's family. In addition to the

photos, defendant sent plaintiff texts about her immigration

status and the possibility of defendant having her green card

revoked.

 Plaintiff stated she was "scared" of the text messages, that

they made her sick, and kept her from sleeping. According to

plaintiff, after she stopped responding to defendant’s text

messages, defendant continued to post items on Facebook, and

plaintiff’s family chat room.

 Defendant sent plaintiff similar text messages even after he

was served with a temporary restraining order ("TRO") that

 3 A-5061-15T1
prohibited him from having contact with plaintiff. Plaintiff

reported this contact to the police, and testified that she was

shocked and scared by defendant's continued communication after

the TRO had been issued.

 In his oral decision granting plaintiff a FRO, Judge Walter

Skrod made specific credibility determinations, finding plaintiff

truthful and defendant incredible. Turning to the alleged

predicate act, the judge analyzed whether defendant’s actions

constituted harassment under N.J.S.A. 2C:33–4(a) and concluded

that they did. He found that by sending hundreds of text messages

and the nude photos of plaintiff over a short period of time,

defendant caused plaintiff annoyance and alarm, and that the

communications were made with the intent to harass.

 Judge Skrod also addressed whether plaintiff required the

protection of an FRO. He found plaintiff’s continued fear of

defendant to be reasonable in light of "the continuous messaging,

especially after the TRO occurred." Ultimately, he decided that

an FRO was necessary to protect plaintiff’s "overall health and

well being" from "being subjected to the barrage of continuous

discussion by defendant." Judge Skrod entered the FRO, and this

appeal followed.

 Defendant contends on appeal that the evidence at the final

hearing was insufficient to sustain the judge's finding that an

 4 A-5061-15T1
act of harassment occurred. He argues that he did not send the

text messages with the requisite purpose of harassing plaintiff.

Rather, he was trying to obtain information concerning her reasons

for the divorce. He further explains that the great volume of

text messages he sent was due to the lack of response by plaintiff.

He also argues that even if he committed an act of harassment,

that an FRO was not required to protect plaintiff, especially

because there was no history of domestic violence between the

parties. We disagree.

 Our scope of review is limited when considering a FRO issued

by the Family Part following a bench trial. We consider a trial

court's findings to be binding on appeal "when supported by

adequate, substantial, and credible evidence." N.J. Div. of Youth

& Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citing N.J.

Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

This deference is particularly appropriate where the evidence at

trial is largely testimonial and hinges upon a court's ability to

make assessments of credibility. Gnall v. Gnall, 222 N.J. 414,

428 (2015). We also defer to the expertise of trial court judges

who routinely hear domestic violence cases in the Family Part.

J.D. v. M.D.F., 207 N.J. 458, 482 (2011) (citing Cesare v. Cesare,

154 N.J. 394, 412-13 (1998)). We will "not disturb the 'factual

findings and legal conclusions of the trial judge unless [we are]

 5 A-5061-15T1
convinced they are so manifestly unsupported by or inconsistent

with the competent, relevant and reasonably credible evidence as

to offend the interests of justice.'" S.D. v. M.J.R., 415 N.J.

Super. 417, 429 (App. Div. 2010) (quoting Cesare, supra, 154 N.J.

at 412). Despite our deferential standard, a judge's purely legal

decisions, are subject to our de novo review. Crespo v. Crespo,

395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty,

L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

 We conclude from our review that Judge Skrod properly

performed the two-fold test required by Silver when a court decides

whether to issue a FRO. Silver, supra, 387 N.J. Super. at 125.

He "[f]irst . . . determine[d] whether the plaintiff ha[d] proven,

by a preponderance of the credible evidence, that one or more of

the predicate acts set forth in N.J.S.A. 2C:25-19(a) ha[d]

occurred," and then whether "a restraining order that provides

protection for" plaintiff was needed. Id. at 125-26. He found

plaintiff established that she was a victim of defendant's repeated

harassing conduct as alleged in her complaint and that she proved

the requisite elements of harassment. See N.J.S.A. 2C:33-4; see

also State v. Hoffman, 149 N.J. 564, 576 (1997). In reaching his

conclusions, the judge properly inferred from defendant's conduct

that defendant intended to harass plaintiff after he learned she

had filed for divorce. See C.M.F. v. R.G.F., 418 N.J. Super. 396,

 6 A-5061-15T1
402 (App. Div. 2011) (addressing the need for proof of intent to

harass) (citing Hoffman, 149 N.J. at 576 (stating that a "finding

of a purpose to harass may be inferred from the evidence

presented," and "[c]ommon sense and experience may inform that

determination." Id. at 577)). The "judge's inferences were

rationally based on evidence in the record." State v. Avena, 281

N.J. Super. 327, 340 (App. Div. 1995).

 We affirm substantially for the reasons expressed by Judge

Skrod in his thoughtful decision. Defendant's arguments that the

weight of the evidence did not support the judge's findings or

that a FRO was not needed "are without sufficient merit to warrant

[further] discussion in a written opinion." R. 2:11-3(e)(1)(E).

Suffice it to say, the judge was "not obligated to find a past

history of abuse before determining that an act of domestic

violence ha[d] been committed." Cesare, supra, 154 N.J. at 402.

"A single act can constitute domestic violence for the purpose of

the issuance of a[] FRO," even without a history of domestic

violence. McGowan v. O’Rourke, 391 N.J. Super. 502, 506 (App.

Div. 2007) (holding that the defendant sending graphic

pornographic pictures of plaintiff to her sister and then implying

that he would also send them to others were egregious acts of

harassment that justified entry of a final restraining order, even

in the absence of any history of prior domestic violence).

 7 A-5061-15T1
Affirmed.

 8 A-5061-15T1