# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1487-17T1

L.W.,

     Plaintiff-Respondent,

v.

A.W.,

     Defendant-Appellant.

_____

Submitted February 5, 2019 – Decided March 7, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0323-15.

Gary W. Moylen, attorney for appellant.

Marki Law, LLC, attorney for respondent (Donna D. Marki, on the brief).

PER CURIAM

     Defendant A.W. appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act of 1991

(PDVA), N.J.S.A. 2C:25-17 to -35, based on harassment, N.J.S.A 2C:33-4(a). He also appeals from an order requiring him to pay plaintiff $20,000 in attorney's fees. We affirm.

The parties were married in 1987, and divorced in 2013, following binding arbitration. They have three adult children. Plaintiff L.W. filed a domestic violence complaint and initial action for divorce in 2010, after defendant was involved in a physical altercation with the middle child, resulting in the child's arrest. Plaintiff dismissed the complaints, with defendant's consent that he would remain out of the house for two years. The Family Part entered an order of dismissal, subject to a consent agreement, which "restrained [the parties] from having any communication with the other, except for non-harassing telephone text or e-mail communication concerning issues relating to their children . . . ."

Defendant failed to comply with the terms of the dismissal order. He moved back into the house within one year, and plaintiff moved out days later – the parties have resided separate and apart ever since. Plaintiff again filed an action for divorce. In his final decision, the arbitrator observed:

> The record is pocked by a history of [defendant's] multiple mass mailings to family, friends and acquaintances[,] and professionals involved with the family, as well as multiple letters, notes[,] and emails to [plaintiff] and the children, or left about so the children could find them, blaming [plaintiff] for the

2

divorce, disparaging her in unfortunate ways[,] and attempting to pit the children against her. . . . By any measure, [defendant] has had a difficult time accepting the fact of the divorce and taking any responsibility for it having occurred.

Defendant's conduct during the divorce proceedings caused the arbitrator to file an order to show cause on October 25, 2012, in response to an emergent application filed by plaintiff's counsel. The order read:

Effective immediately, defendant's parenting time . . . is suspended until therapeutic supervision by Dr. Sharon Ryan Montgomery has commenced;

Effective immediately, defendant is enjoined and restrained from discussing, communicating, emailing[,] . . . sending text messages[,] or other forms of written communications[,] to the parties' children . . . . [and] to plaintiff . . . .

The arbitrator also imposed sanctions on defendant, and in his final decision, the arbitrator awarded plaintiff counsel fees "as a result of [defendant's] bad faith during the litigation." The arbitrator's final decision also held that "The No Contact Order(s) currently in place shall be maintained without change going forward."

The final judgment of divorce, entered on October 17, 2013, provided that the "Arbitrator's Final Decision and Award is confirmed and incorporated into their Final Judgment of Divorce and the parties are directed to comply with its

A-1487-17T1

terms." However, defendant continued sending plaintiff harassing communications, including three notes left in plaintiff's driveway in May 2014. One note stated, "Payments will end IF you live with the man with whom you had an affair." Another note read:

> People know you cannot even look at me. Why can you not look at me? Is it because you know it is harder to face your problems (years of depression, the abortion, the drinking) than it is to work out these issues with your therapist? The easiest thing in the world to do is to quit. That is how Peter came on to the scene. The second easiest thing in the world to do is blame others for your own problems. And [our daughter] gets zapped in the cross-fire………

Based on defendant's conduct, plaintiff filed an enforcement motion, and on May 20, 2014, Family Part Judge Michael E. Hubner entered an order stating, in relevant part:

> The "no contact" provision of the parties' [f]inal [j]udgment of [d]ivorce is hereby enforced and [d]efendant shall be on notice that future violations will be met with sanctions. However, the [c]ourt notes that a [r]estraining [o]rder cannot be awarded on the basis of this motion under the "FM" [d]ocket. Plaintiff may apply for a [r]estraining [o]rder in the Domestic Violence Unit of the Morris County Superior Court pursuant to the proper procedures.

A-1487-17T1

Even after the May 20, 2014 order, defendant continued to send plaintiff written communications. On May 30, 2014, an email from defendant to plaintiff read in part:

> In every book on divorce, there is an example of one person blaming the other person for that person's problems. Your new man gives you an excuse to start over and pretend that I am the reason for your unhappiness; changing husbands will not solve your problems, but good luck trying.
>
> It will feel good for a few years, then life sets in and you will see.

Defendant continued to send plaintiff written communications throughout the summer and fall of 2014, as demonstrated in the voluminous documents in the record. One note, again left in plaintiff's driveway, only read, "Time to Purge." Another typed note read in part, "I cannot believe the agony you are putting our youngest daughter through." Several more notes, from September 2014, continued to blame plaintiff for the divorce, and predict that the parties' children will "realize [plaintiff] is the one who left, who had the affair, who split our family," and that plaintiff "left," "quit," "caused this," "went back on her wedding vows," and that she "is going to be the loser in the long run." Defendant also sent typed notes to their youngest daughter: one stated in part, "It is a

5

gigantic loss to not have your father around," while another stated, "You are missing a lot by not having a father in your life."

On September 25, 2014, plaintiff filed a domestic violence complaint, claiming that four typed notes delivered by defendant to plaintiff via their daughter on September 19, 2014 constituted harassment. One note read, "How will you explain this on Judgment Day?" with two Bible passages enclosed condemning divorce. Another note read, "Changing husbands will not repair what is hurting your soul." The third note concerned an EZ Pass violation, and the fourth read, "Every night I pray for your health, your safety and that you have found the man of your dreams."

After a bench trial, during which only the unrepresented parties testified, the judge rendered an oral decision on October 6, 2014, concluding an FRO should issue in plaintiff's favor and against defendant. Defendant appealed, and we reversed and remanded based on the trial judge's failure to make the requisite factual findings for the entry of an FRO. L.W. v. A.W., No. A-1659-14 (App. Div. January 29, 2016). First, we held that "the judge did not consider . . . whether defendant's alleged communications should have been labeled harassment or merely 'ordinary domestic contretemps.'" Id. at 2 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 249-50 (App. Div. 1995)). Further,

we found the trial judge failed to make the requisite finding "that there is a need to prevent further domestic violence . . . ." Id. at 4 (citing Silver v. Silver, 387 N.J. Super. 112, 127 (App. Div. 2006)).

On remand, the trial judge found "the testimony of [plaintiff] to be very credible.  The testimony regarding the numerous written and verbal communications, and what effect these communications had on her was consistent, and supported by the evidence admitted."  The judge then found that defendant committed a predicate act of harassment, finding the September 19, 2014 notes to plaintiff constituted "a communication in any other manner likely to cause annoyance or alarm."  N.J.S.A. 2C:33-4(a)  The judge found that the notes, "standing alone would be annoying to any reasonable person," and "in light of the sheer number of prior harassing communications from defendant to plaintiff and the content of said communications[, t]he [c]ourt finds no reasonable person would find them anything but harassing."  The judge noted that over 100 communications were admitted as evidence, and after reading a number of examples, he stated, "one could suggest that this is domestic contretemps," but emphasized that "when you engage in this type of unrelenting communication, it becomes harassing."

A-1487-17T1

The judge then found that plaintiff does in fact require an FRO "to protect her from . . . defendant with regard to immediate and future harm." The judge reasoned:

> This defendant continued to send harassing communications non-stop up and until the entry of the Temporary Restraining Order.
>
> Arbitrator Penza noted the behavior as did Judge Hubner. The [j]udgment of [d]ivorce did not stop him from the conduct. Arbitrator Penza's comments in his decision did[ not] stop . . . defendant. Judge Hubner's order did not stop . . . defendant. Hopefully the fear of an immediate arrest for a violation of this [FRO] will.

After the judge entered the FRO, plaintiff filed an application for attorney's fees, supported by a detailed certification, an itemized bill documenting hourly fees and costs exceeding $60,000, and a letter brief. The judge granted the application, but only awarded only $20,000. This appeal followed.

On appeal, defendant contends, there was insufficient evidence in the record supporting the judge's findings regarding the issuance of the FRO. Defendant also challenges the award of attorney's fees.

Our review of a trial court's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid.

A-1487-17T1

Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). The question is not whether we would come to a different conclusion were we the trial tribunal. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002). We intervene only when convinced that the trial judge's factual findings and legal conclusions "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Where our review addresses questions of law, "the trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., 351 N.J. Super. at 434 (citing Manalapan Realty, LP v. Twp. Comm. Of Manalapan, 140 N.J. 366, 378 (1995)).

A plaintiff seeking an FRO under the PDVA must establish by a preponderance of the evidence that the defendant committed an act of domestic violence. Franklin v. Sloskey, 385 N.J. Super. 534, 542 (App. Div. 2006). The

9

PDVA defines domestic violence as the commission of any one or more of the fourteen crimes and offenses enumerated in N.J.S.A. 2C:25-19(a). Harassment under N.J.S.A. 2C:33-4 is among the fourteen predicate offenses that, if proven, may entitle a plaintiff to the entry of an FRO. N.J.S.A. 2C:25-19(a)(13); N.J.S.A. 2C:25-29(b)(1), (6)-(7). The offense of harassment at issue here is committed when a person, with purpose to harass, "[m]akes . . . a communication . . . in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a). To establish harassment under N.J.S.A. 2C:33-4(a), the plaintiff must prove that

> (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.
>
> [C.M.F. v. R.G.F., 418 N.J. Super. 396, 402 (App. Div. 2011) (quoting State v. Hoffman, 149 N.J. 564, 576 (1997)).]

A finding of harassment requires proof that the defendant acted with "purpose to harass." See Silver, 387 N.J. Super. at 124. "A finding of a purpose to harass may be inferred from the evidence presented," and "[c]ommon sense and experience may inform that determination." Hoffman, 149 N.J. at 577. If a

defendant's anger motivates a verbal attack of a plaintiff, it does not negate a defendant's intent to harass pursuant to N.J.S.A. 2C:33-4(a). C.M.F., 418 N.J. Super. at 404.

Significantly, the commission of a predicate act does not automatically "warrant the issuance of a domestic violence order." Corrente, 281 N.J. Super. at 248. Rather, consideration of a domestic violence complaint is a two-fold task. Silver, 387 N.J. Super. at 125. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Ibid. Second, upon a finding that the defendant committed a predicate act of domestic violence, the court determines whether it should "enter a restraining order that provides protection for the victim." Id. at 126.

For the second prong, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

11

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the Act does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 401-02 (1998) (alteration in original) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).

Ordinarily, domestic violence is

more than an isolated aberrant non-violent act. . . . While a single sufficiently egregious action may constitute domestic violence even if there is no history of abuse between the parties, a court may also determine that an ambiguous incident qualifies as domestic violence based on finding previous acts of violence.

[Silver, 387 N.J. Super. at 123 (quoting Kamen v. Egan, 322 N.J. Super. 222, 227-28 (App. Div. 1999)).]

12

However, the [PDVA] is not intended to encompass "ordinary domestic contretemps." Corrente, 281 N.J. Super. at 250. Rather, "[t]he [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen, 322 N.J. Super. at 229).

We are satisfied that the evidence in this case amply supports the judge's finding that defendant committed the predicate act of harassment under N.J.S.A. 2C:33-4(a). In the four months between Judge Hubner's order reinforcing the "no contact orders" from the parties' final judgment of divorce, and plaintiff's filing of this action, the record contains approximately seventy written communications from defendant to plaintiff, the contents of which include, but are not limited to: blaming plaintiff for any effect the divorce may have on their youngest daughter; accusing plaintiff of "destroying" their son's confidence; stating that their daughter will one day blame plaintiff; asserting that changing husbands will not solve her problems; leaving a note on the driveway only stating "Time to Purge"; accusing plaintiff of putting their daughter through "agony"; and accusing plaintiff of blaming him for the divorce. Defendant also sent written communications to their youngest daughter, essentially stating that she is missing out on not having him around. The communications culminated with what led to plaintiff's filing of the instant action: the written notes, "How

13

will you explain this on Judgment Day," and "Changing husbands will not repair what is hurting your soul," along with several Bible passages condemning divorce. We agree with the trial judge that these communications were written and delivered in a manner likely to cause annoyance or alarm, N.J.S.A. 2C:33-4(a), and that the necessary intent to harass plaintiff can be inferred from the extent and persistence of the written communications in the record. Accordingly, the first Silver prong was met.

We are further satisfied that the evidence supports the judge's finding that an FRO is necessary to protect plaintiff from immediate and future harm. Defendant was formally ordered by the arbitrator and Family Part to limit and avoid communication with plaintiff and the children multiple times, yet he consistently ignored the orders with numerous harassing written communications. The trial judge found that these communications continued "non-stop up and until the entry of the Temporary Restraining Order," and that "[h]opefully[,] the fear of an arrest for a violation of this [FRO] will" stop defendant from continuing the conduct. Accordingly, the second Silver prong was met.

Addressing the order requiring defendant to pay plaintiff $20,000 in counsel fees, we begin by recognizing the limited nature of our review. In

reviewing the grant or denial of a counsel fee award, we accord significant deference to the trial judge's determinations. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). A trial judge's "fee determinations . . . will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

A trial judge is specifically authorized by the PDVA to award as damages the reasonable counsel fees and costs incurred by a victim of domestic violence. Under the PDVA, a judge may enter an order "requiring the defendant to pay to the victim monetary compensation for losses suffered as a direct result of the act of domestic violence[,]" which includes "reasonable attorney's fees [and] court costs . . . ." N.J.S.A. 2C:25-29(b)(4). The award is designed "to make the victim whole." Wine v. Quezada, 379 N.J. Super. 287, 292 (Ch. Div. 2005). Because fees and costs in a domestic violence action are awarded as damages, an award is "not subject to the traditional analysis" for an award of fees in family-type claims pursuant to N.J.S.A. 2A:34-23, and the court is not obliged to consider the parties' financial circumstances. McGowan, 391 N.J. Super. at 507 (quoting Schmidt v. Schmidt, 262 N.J. Super. 451, 453 (Ch. Div. 1992)); see also Wine, 379 N.J. Super. at 292. Accordingly, the only three requirements for an award

15

of counsel fees under the PDVA are that the fees are the "direct result of . . . domestic violence," they are reasonable, and that they are presented by way of affidavit pursuant to Rule 4:42-9(b). McGowan, 391 N.J. Super. at 507 (quoting Schmidt, 262 N.J. Super. at 454); Wine, 379 N.J. Super. at 291. Here the record clearly reflects that the fees were the direct result of domestic violence, they were presented by way of the required affidavit, and the judge's findings in favor of plaintiff in granting her an FRO clearly reflect an implicit finding of the court that the fees were reasonable, at least to the extent of the amount awarded.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION