# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4626-18T3

J.M.,

    Plaintiff-Respondent,

v.

D.W.,

    Defendant-Appellant.

_____

Submitted March 16, 2020 – Decided April 7, 2020

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-1228-19.

Hark & Hark, attorneys for appellant (Jeffrey S. Hark, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant, D.W.,[1] appeals from a final restraining order (FRO) entered in favor of his former girlfriend, plaintiff, J.M., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.

On May 30, 2019, plaintiff filed a complaint seeking a domestic violence restraining order against defendant. The complaint alleged plaintiff "broke off [her] relationship with . . . defendant in March" and thereafter defendant "refuse[d] to comply with plaintiff's wishes and continue[d] to try to meet and be in a relationship with her." Plaintiff also alleged defendant knocked on her bedroom window "to get her attention." She further asserted that on May 30, 2019, defendant appeared at her sister's house, and, when plaintiff left in her vehicle, defendant followed in his vehicle through three municipalities, driving recklessly and at a high rate of speed.

Plaintiff alleged defendant's actions constituted the predicate act of harassment, N.J.S.A. 2C:33-4, under the PDVA. See N.J.S.A. 2C:25-19(a)(12). The court issued a domestic violence temporary restraining order against defendant.

---

[1] We use initials to identify the parties to protect the identity of an alleged victim of domestic violence because that information is exempt from public access under Rule 1:38-3(d)(10). Plaintiff did not participate in this appeal.

A-4626-18T3

At the ensuing, brief hearing on plaintiff's request for an FRO, plaintiff testified defendant is her former boyfriend, and, on May 30, 2019, she received "multiple missed calls" from him on her phone. Plaintiff said she went to her sister's house; she did not tell defendant she was there; defendant "somehow found out where [she] was"; and she saw defendant drive up to her sister's house in a vehicle. According to plaintiff, when she saw defendant, she drove away, and defendant "began to follow [her] and cut [her] off." She reached speeds of "[seventy] miles per hour" while defendant tried "to cut [her] off," "getting very close to" the "rear end" of her vehicle. Plaintiff further explained that during the "couple of months" prior to the May 30 incident, defendant on "maybe" three occasions went to "[her] window at night," and at other times "talked down on" her.

Defendant testified he and plaintiff broke up two weeks prior to May 30, 2019. He explained that prior to seeing plaintiff on May 30, he exchanged messages with her and she indicated that she wanted a "break" in their relationship. He wanted to speak with plaintiff and went to her sister's house because plaintiff "always goes there," and that evening she posted a picture on "Snapchat" showing she was there.

3

According to defendant, when he arrived at plaintiff's sister's house, plaintiff "took off" and was "swerving" and "doing like [eighty]." He said plaintiff was "pretty far ahead of" him; he was never behind her; and he "did not catch up with her." He also admitted following plaintiff for "a mile [or] two," and catching up with her when she stopped at a light. Defendant testified he stopped because he "feared . . . she was going to get in . . . a car accident or something." He said plaintiff called him on the phone and told him her "sister already called the cops so [he] might as well just stop." Defendant said when he received the call, he "was already done following her" and "already went home."

Following defendant's testimony, plaintiff further stated defendant lives around the corner from her house and that he drove past her home each night prior to entry of the temporary restraining order. She also stated that following entry of the temporary restraining order, defendant no longer drives past her house but his "friend" did. Plaintiff testified she did not "want to say [she] feel[s] not safe." She said that instead, she "just feel[s] on edge" and is "always looking out the window."

Based on the abbreviated testimony provided, the court made terse factual findings. It found that while plaintiff was at her sister's house, defendant

appeared in his vehicle. The court noted defendant testified he went to the house to speak with plaintiff about their relationship, but the court stated it did not know how defendant would have known plaintiff was at her sister's house unless defendant "had some kind of tangential contact with her or otherwise was following her."[2] The court further explained plaintiff testified "she pulled away and [defendant] followed her at a high rate of speed, pulling up next to her in a reckless manner." The court further noted defendant testified plaintiff "was going [eighty] miles an hour and he caught up with [plaintiff] at a traffic light." The court found plaintiff's "testimony . . . to be credible," and noted it was "having a lot of trouble with [defendant's] version of what occurred and what the relationship is."

Based on those limited findings, the judge concluded "there was an act of domestic violence" and "the necessity of a restraining order does, in fact, exist." The court then declared it was "going to enter a [FRO]." The court entered the FRO, and this appeal followed.

Our scope of review is limited when considering an FRO issued by the Family Part following a hearing. A trial court's findings are binding on appeal

---

[2] The court did not address defendant's testimony explaining how he knew plaintiff was at her sister's house.

A-4626-18T3

"when supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). This deference is particularly appropriate where the evidence at trial is largely testimonial and hinges upon a court's ability to assess credibility. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We also recognize the expertise of trial court judges who routinely hear domestic violence cases in the Family Part. R.G., 217 N.J. at 553. We will not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

When making a determination whether to grant an FRO, the trial court must engage in a two-step analysis. Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"). Second, the court must determine that a restraining order is

necessary to provide protection for the victim.  Silver, 387 N.J. Super. at 126-27. As part of that second step, the judge must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127).

The court is also required to make specific findings of fact and state his or her conclusions of law.  R. 1:7-4(a); see also Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006) (requiring an adequate explanation of the basis for a court's action).  "Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'"  Gnall, 222 N.J. at 428 (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)).  Thus, although our standard of review is generally limited, where inadequate factual findings are made or where issues are not addressed, we are constrained to vacate the FRO and remand for further proceedings.  Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015); see also Franklin v. Sloskey, 385 N.J. Super. 534, 544 (App. Div. 2006) (vacating an FRO where the facts in the record did not support a

determination of harassment, and there was no history of domestic violence between the parties).

Here, the court failed to place adequate findings of fact and conclusions of law on the record. In the first instance, the court did not make any findings as to the alleged acts by defendant that it determined constituted the predicate act of domestic violence alleged in plaintiff's complaint —harassment under N.J.S.A. 2C:33-4. See Silver, 387 N.J. Super. at 125. Instead, the court briefly summarized portions of the parties' testimony, found plaintiff's testimony credible, and, in conclusory fashion, declared it was "satisfied there was an act of domestic violence." See Silver, 387 N.J. Super. at 125; see also N.J.S.A. 2C:33-4.

To prove harassment under N.J.S.A. 2C:33-4, it must be established defendant committed an act prohibited under subsections (a), (b), or (c) with the purpose to harass. C.M.F. v. R.G.F., 418 N.J. Super. 396, 402-03 (App. Div. 2011). Here, the court did not make factual findings that defendant either committed one of the acts prohibited by the statute or that he acted with the purpose to harass. See ibid. Indeed, the court did not identify which subsection of the statute it determined defendant violated.

Moreover, the court did not make any findings as to why an FRO is necessary. See Silver, 387 N.J. Super. at 126-27. The court stated only that it was "satisfied . . . the necessity of a restraining order does, in fact, exist." The court did not make any findings or explain how contact by defendant would constitute an immediate danger to plaintiff or how an FRO would prevent further acts of domestic violence against her. See J.D., 207 N.J. at 476. The court also did not consider, evaluate, or make any findings concerning the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6), see Silver, 387 N.J. Super. at 126-27, and did not consider or make findings concerning whether there was a history of domestic violence between the parties, see id. at 126 (noting that determining whether an FRO is necessary requires consideration of "the evidence in light of whether there is a previous history of domestic violence").

Accordingly, we vacate the FRO because there are inadequate findings supporting it, and remand for further proceedings. On remand, the court shall reconsider the trial record, hear additional arguments from the parties, and make appropriate findings of fact and conclusions of law supporting its decision to either grant or deny the requested FRO. See R. 1:7-4. The May 30, 2019 temporary restraining order shall remain in effect pending further order of the remand court.

9

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION