# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5378-18T2

N.K.K.,

     Plaintiff-Respondent,

v.

D.J.H.,[1]

     Defendant-Appellant.

_____

Argued telephonically August 10, 2020 –
Decided August 18, 2020

Before Judges Whipple and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-2121-19.

Daniel M. Rosenberg argued the cause for appellant (Rosenberg Perry & Associates, LLC, attorneys; Daniel M. Rosenberg and Nathan J. Mammarella, on the brief).

Respondent has not filed a brief.

---

[1] We use initials to protect the parties' privacy interests in accordance with Rule 1:38-3(d)(10).

PER CURIAM

Defendant D.J.H. appeals from a July 3, 2019 final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. We affirm, substantially for the reasons set forth in the thoughtful, reasoned oral opinion of Judge John J. Burke III.

Judge Burke allowed each party to testify extensively at the FRO hearing about the marital discord that led to the parties' divorce. The parties also were given the opportunity to cross-examine each other regarding the June 25, 2019 incident that prompted plaintiff N.K.K. to seek the protection of a restraining order. Accordingly, during the hearing, plaintiff testified that prior to the June 25 incident, defendant committed acts of domestic violence against her, such as punching her in the face and "trying to sexually attack" her. She also testified that on the day of the incident, defendant showed up unexpectedly, called her vulgar names in front of their son and threw her personal property items against her garage door. According to plaintiff, when defendant arrived at her home, he had no parenting time scheduled with the children and there was "no reason why he should be showing up at the house . . . unannounced." Further, she stated that in the two years leading up to the incident, defendant consistently violated the parties' civil restraining order and that she was tired of "living in fear."

A-5378-18T2

When defendant testified, he too, complained about plaintiff having perpetrated acts of domestic violence against him, including hitting him with a golf club. Defendant explained the parties had a disagreement, that he "hit [plaintiff and] . . . agitated her to a boiling point where she grabbed the golf club" and hit him in his arm. Additionally, defendant described his actions on the date of the June 25 incident and admitted, "[s]o, yes, I went rogue. I drove up to the back of . . . the driveway to drop her stuff off to her." In response to plaintiff's complaints that defendant had stalked her and driven by her home, defendant stated, "[t]here is no restriction for me being in the neighborhood. There is only a restriction for me being at the house."

At the conclusion of the hearing, the judge credited the parties' testimony regarding the acts of domestic violence each had committed against the other prior to the June 25 incident. Considering that history, as well as the existence of formal civil restraints between the parties, Judge Burke found defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4, against plaintiff. In reaching this conclusion, the judge cited to State v. Hoffman, 149 N.J. 564 (1997), and inferred from defendant's conduct that he intended to harass plaintiff. See C.M.F. v. R.G.F., 418 N.J. Super. 396, 402 (App. Div. 2011) (citing Hoffman, 149 N.J. at 576, 577 for the principle that a "finding of a

purpose to harass may be inferred from the evidence presented," and "[c]ommon sense and experience may inform that determination.").

Specifically, Judge Burke found defendant drove to the former marital residence, where plaintiff lived with the parties' children, and he dropped her personal property in the driveway, in contravention of a September 29, 2017 civil restraining order. Judge Burke noted that paragraph one of that order read: "[plaintiff] shall have sole [possession] of the matrimonial residence until further order of the [c]ourt, or mutual agreement by the parties . . . . [Defendant] shall not come to [the] residence, [except] for curbside pick-up without prior agreement in writing." Additionally, the judge referenced paragraph six of the order, which stated, "[t]he parties shall not have any communication with one another except through email or text regarding welfare, visitation, and parenting time only . . . communications shall be civil and non-harassing." The judge found this order was "crystal clear on its face" and

> when the defendant drove to the [former] marital residence . . . when he backed up the car, and he drove three hundred feet down the driveway backwards, when he got out of the car in the driveway of the residence, and he started to empty the items out there, he did that in violation of the order for civil restraints.
>
> . . . .

And as . . . [defendant] testified to, he - - he was going rogue. He said that in his testimony.

When he went there that day, . . . that was clearly done with the purpose to harass. He did that as a communication to show [plaintiff] that he [did] it with the purpose to harass . . . . He didn't do it at a police department. He didn't do it through counsel. Both parties were represented in the [matrimonial case]. He didn't do it at a neutral location. He didn't do it at the [abuse and neglect case] hearing. He didn't do it in any of the other proceedings that were going on. He did it at the marital residence. And when he did it, he did it with the purpose to clearly do it to harass.

. . . .

Given the fact that there is this prior history of domestic violence going on between the parties, it was done as a communication. It was done to say you will not be left alone. I will come to your house and I will empty the items.

On appeal, defendant argues the trial judge failed to properly apply the analysis required under <u>Silver v. Silver</u>, 387 N.J. Super. 112 (App. Div. 2006), and that the judge's credibility determinations were tainted because the judge "improperly took [j]udicial [n]otice of information relating to [plaintiff's] alarm system." We are not persuaded.

Our review of a trial judge's factual findings are limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible

evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). On the other hand, we will review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

When considering a domestic violence complaint, a court must first determine whether the plaintiff has demonstrated, by a preponderance of credible evidence, that the defendant has committed a predicate act under N.J.S.A. 2C:25-19(a). Silver, 387 N.J. Super. at 125 (citations omitted). One such predicate act is harassment, pursuant to N.J.S.A. 2C:33-4. N.J.S.A. 2C:25-19(a)(13). There are three different forms of the petty disorderly persons offense of harassment under N.J.S.A. 2C:33-4, and each form requires proof of the purpose to harass. However, as already noted, the intent to harass "may be inferred from the evidence presented" and "common sense and experience may

inform that determination." See Hoffman, 149 N.J. at 577 (citations omitted); see also J.D. v. M.D.F., 207 N.J. 458, 477 (2011) (citing Hoffman, 149 N.J. at 577).

Here, we are satisfied Judge Burke's determination that defendant intended to harass plaintiff when he knowingly violated a civil restraining order and went to plaintiff's home unannounced is amply supported by the record, particularly given the judge's credibility findings. Indeed, Judge Burke found defendant's testimony was "not inherently believable in any manner," whereas he found plaintiff "had an accurate recollection. She provided good explanations. There was no contradiction[] in her testimony . . . . She was inherently believable." Although defendant argues these credibility findings were tainted because the judge made assumptions about how plaintiff's alarm system worked during one instance when defendant unexpectedly returned to the former marital residence, we are not convinced. Instead, we are satisfied the judge's reference to plaintiff's alarm system was of no moment, considering defendant's own testimony that he went "rogue" and "[m]aybe there was a better way to go about it" to return plaintiff's personalty to her, knowing he was restrained from going to plaintiff's residence.

Turning to the second Silver prong, we also are satisfied Judge Burke properly analyzed the appropriate factors and specifically considered N.J.S.A. 2C:25-29(a)(1), i.e., the parties' previous history of domestic violence. He specifically found there was a need to protect plaintiff "from immediate danger, and to prevent further abuse," noting that despite an order for civil restraints, "defendant came down the driveway in violation of the order for civil restraints, didn't follow it, emptied out items, and he was clearly on notice that he should not have done that." Further, the judge found defendant's testimony that plaintiff sought a temporary restraining order "to gain the upper hand in the [matrimonial] litigation" had "zero credibility."

Given our deferential standard of review, we perceive no basis to second-guess Judge Burke's factual and credibility findings. Accordingly, the judge's conclusion that plaintiff established the need for an FRO as a matter of law is unassailable. To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-5378-18T2