897 A.2d 1113 (2006)
385 N.J. Super. 534
Joseph S. FRANKLIN, Plaintiff-Respondent,
v.
Joanna SLOSKEY, Defendant-Appellant.
Joanna Sloskey, Plaintiff-Respondent,
v.
Joseph S. Franklin, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 25, 2006.
Decided May 23, 2006.
*1114 The Camden Center for Law and Social Justice, attorneys for Joanna Sloskey, appellant in A-2777-04T1 and respondent in A-2685-04T1 (Denise Higgins, on the brief).
Louis Cappelli, Jr., attorney for Joseph Franklin, respondent in A-2777-04T1 and appellant in A-2685-04T1.
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
Joseph Franklin and Joanna Sloskey, who were involved in a two-and-one-half year dating relationship, each appeal from final restraining orders (FROs) entered under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -25(DVA). The orders were entered following a final hearing on a temporary restraining order (TRO) issued against Sloskey pursuant to a domestic violence complaint filed by Franklin alleging harassment. Both parties were unrepresented and, in essence, consented to the issuance of the restraining orders, in the absence of any findings by the court, and in Franklin's case, in the absence of a prior domestic violence complaint having been filed against him by Sloskey. We calendared the appeals back-to-back and now dispose of both appeals in this single opinion.
On appeal, Franklin contends the FRO was entered against him in violation of his *1115 due process rights and without a finding that he committed an act of domestic violence. Sloskey contends she was denied her right to cross-examine Franklin or his witness, and the judge failed to make any credibility findings and failed to find that an act of domestic violence occurred. We agree that the judge erred in all of these respects and reverse both FROs.
On December 14, 2004 Franklin was issued a TRO in the Haddon Heights Municipal Court against Sloskey based on an allegation that after their relationship ended in August, she continually harassed him by telephone, drove by his home and followed him. On the December 23, 2004 return date of the FRO, the Family Part judge conducted an informal and unorganized hearing. Although he appropriately began with Franklin's testimony, rather than allowing the complainant to complete his testimony and then permitting Sloskey to cross-examine him, part way through Franklin's testimony, the judge began to direct questions at Sloskey. The judge then returned to Franklin and continued to alternate direct examination of the parties and their witnesses, a few questions at a time, depending on the topic the judge wished to pursue.
Franklin testified that after he ended their relationship in August, Sloskey continuously called him all hours of the night, i.e. "80 phone calls from 2:00 a.m. `til 6:00 a.m,'" camped outside his house, approached and fought with people who were at his house, and harassed the person he was currently dating. Franklin claimed he had two cell phones with him with thirty different threatening messages that Sloskey had left over a period of a week. He began playing the voice messages, the content of which was not transcribed, but based on his commentary in the record, the calls were not from her. Franklin further testified that after Thanksgiving, Sloskey left him a note that she was pregnant. On December 2 he called her mother to confirm that fact, and he then called Sloskey to inquire what she intended to do about the baby.
Franklin's current girlfriend, Kathleen Beal, testified to being present at Franklin's house on December 14 when Sloskey called numerous times from 3:00 to 5:30 a.m., and that afternoon Sloskey stopped by the house and confronted her. Franklin interjected that Sloskey called "forty times [as] he had caller ID."
Sloskey testified their relationship ended on October 26, when she told Franklin she was pregnant, and he threw her out of the house and changed the locks. She explained she went back to the house to talk to him on October 30 because she was "pregnant" and "scared" and had to move back home and pay rent to her parents. Sloskey testified that she did not hear from Franklin until December 2. She then testified Franklin took her to lunch on December 9 and they then "called each other back and forth." During those calls, Franklin continued to express feelings for her and denied he was dating anyone. Sloskey called him on December 14 to discuss issues regarding her pregnancy and stopped by that day to continue the discussions. She was surprised to see another woman pulling up in front of Franklin's house to check the mail. A physical confrontation ensued, which Sloskey contended was initiated by Beal and during which she claimed she was bruised, necessitating medical treatment.
Sloskey's mother corroborated her daughter's testimony about the date and circumstances in which the parties' relationship ended. She also testified about Franklin's phone calls to her and her daughter on December 2.
During the course of Franklin's testimony, he made the comment, "Your Honor, give her a Restraining Order against me, *1116 give me a Restraining Order against her. I never want to see her again, I never want to call her. I'm not goin' back and forth tit for tat. I'm embarrassed to be here." Rather than ignore the comment, as one clearly made out of frustration, the judge entered an FRO against both Franklin and Sloskey based on the following colloquy:
Q Are you asking for a Restraining Order?
MS. SLOSKEY: No.
....
MS. SLOSKEY: [The police] said since he filed one they won't give me one.
....
THE COURT: Do you want a Rest he said he didn't object to you getting a Restraining Order.
MS. SLOSKEY: I don't think that's I think that's all silliness and it's childishness.
THE COURT: Well, he just ... doesn't want to have anymore contact with you.
MS. SLOSKEY: And that's fine.
....
MS. SLOSKEY: He won't see his son be born, he won't pick out a name, he won't see any of it.
THE COURT: Okay, but hedo you understand you are required to pay child support?
MR. FRANKLIN: Whatever.
THE COURT: Okay. I'm going to grant the Restraining Order.
MR. FRANKLIN: Thank you, thank you.
THE COURT: I mean he doesn't want to be harassed. There may be harassment
MS. SLOSKEY: But the
THE COURT: There may be harassment on both parts and quite frankly would I give you a Restraining Order, absolutely.
MS. SLOSKEY: No, but you would give me one instead of him?
THE COURT: No, but I'll give you both Restraining Orders.
MS. SLOSKEY: Oh, okay.
THE COURT: You don't object?
MR. FRANKLIN: I could care less.
THE COURT: Give you both restraining orders.
MR. FRANKLIN: Cool.
THE COURT: You want one?
MR. FRANKLIN: Thank you.
MS. SLOSKEY: Sure.
THE COURT: All right.
MR. FRANKLIN: Give her one.
THE COURT: Give her one.
MR. FRANKLIN: Give her two.
THE COURT: Relax.
MOTHER: Can we get one against his brother too?
THE COURT: No, no, no. Going to do a Restraining order against the two of them....
Franklin's FRO against Sloskey extended protection to Beal (incorrectly designated as "Bean") and Franklin's family. Sloskey's FRO applied only against Franklin.

I.
We deal first with Franklin's appeal. Franklin appeared at the hearing on December 23 as the purported victim of domestic violence, intending to proceed on his complaint for an FRO against his former girlfriend. As Sloskey had never filed a domestic violence complaint nor applied for a TRO against him, he had no expectation he was facing adverse consequences and he did not retain counsel. It is clear from the record the trial judge issued an FRO against Franklin solely because he consented to one during the stress of the *1117 hearing, without there ever having been a complaint filed, or charges of domestic violence asserted against him. This was clearly improper and a fundamental violation of Franklin's constitutional right to due process and a fair trial. See H.E.S. v. J.C.S., 175 N.J. 309, 324-25, 815 A.2d 405 (2003) (it violates due process to require a defendant to go forward with a final hearing twenty-four hours after he was served with a domestic violence complaint; it also violates his due process rights to grant an FRO based on allegations not contained in the complaint); see also J.F. v. B.K., 308 N.J.Super. 387, 391-92, 706 A.2d 203 (App. Div.1998) (trial court's finding that defendant committed an act of domestic violence based not on an act alleged in the complaint, but rather on a course of prior conduct not mentioned in the complaint, deprived defendant of due process, where defendant was not told of the charges until the day of the hearing).
The record does not support Sloskey's argument that the trial judge was "careful in his questioning of [Franklin] to ensure that he understood his right to object" and that Franklin was given ample opportunity to request a postponement and seek counsel and waived his right to do so. On the contrary, the trial judge never informed Franklin of the serious consequences associated with the entry of a domestic violence restraining order. Nor did the judge give him any indication that he had a right to an adjournment of the trial or even suggest he consult with an attorney. We have consistently recognized that the issuance of an FRO "has serious consequences to the personal and professional lives of those who are found guilty of what the Legislature has characterized as `a serious crime against society.'" Bresocnik v. Gallegos, 367 N.J.Super. 178, 181, 842 A.2d 276 (App.Div.2004) (quoting N.J.S.A. 2C:25-18). We elaborated:
Once a final restraining order is entered, a defendant is subjected to fingerprinting, N.J.S.A. 53:1-15, and the Administrative Office of the Courts maintains a central registry of all persons who have had domestic violence restraining orders entered against them, N.J.S.A. 2C:25-34. Violation of a restraining order constitutes contempt, and a second or subsequent nonindictable domestic violence contempt offense requires a minimum term of thirty days imprisonment. N.J.S.A. 2C:25-30. The issuing court may also impose a number of other wide-reaching sanctions impairing a defendant's interests in liberty and freedom in order "to prevent further abuse." N.J.S.A. 2C:29(b).
[Peterson v. Peterson, 374 N.J.Super. 116, 124, 863 A.2d 1059 (App.Div.2005).]
"Furthermore, familial relationships may be fundamentally altered when a restraining order is in effect." Chernesky v. Fedorczyk, 346 N.J.Super. 34, 40, 786 A.2d 881 (App.Div.2001). We note that there may be a child involved in this case. We also note that Franklin is a retired police officer, and he may be adversely affected by the prohibition against possession of weapons. See N.J.S.A. 2C:25-29(16).
Moreover, because of the serious consequences of a domestic violence restraining order, such order may be issued "only after a finding or an admission is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29a. See also R. 5:7A; Domestic Violence Procedures Manual-Revised Edition, Section IV Court Procedures 4.13.2 Dispositions ("The court only has jurisdiction to enter restraints against a defendant after a finding by the court or an admission by the defendant that the defendant has committed an act(s) of domestic violence ... the defendant must provide a factual basis for the admission that an act of domestic violence has occurred"). A defendant may not "consent" *1118 to the entry of an order, and a court may not enter one unless there is a finding of domestic violence by the court. Chernesky, supra, 346 N.J.Super. at 39, 786 A.2d 881.
To compound the error in this case, the trial judge did not even inform Franklin as to the act of domestic violence to which he was tacitly consenting by agreeing to the entry of the FRO. The issue is made even more confusing by the fact that although the judge referenced "harassment" when he issued the FRO, following the hearing the judge drafted the domestic violence complaint and signed the TRO, based on the predicate offense of "terroristic threats."[1] Regardless, Franklin neither admitted that any act of domestic violence occurred nor provided a factual basis to support such a finding. In fact, the judge did not even make a pretense of a finding that Franklin committed an act of domestic violence against Sloskey but rather, in violation of statute, case law and the Domestic Violence Manual, entered an FRO against him solely based on his consent. That order clearly must be vacated.

II.
We turn now to Sloskey's appeal of the FRO entered against her. To subject a defendant to an FRO, a plaintiff must first prove that the defendant committed an act of domestic violence, as defined by the statute, N.J.S.A. 2C:25-19a. Cesare v. Cesare, 154 N.J. 394, 713 A.2d 390 (1998). In this instance, it was necessary for Franklin to have proven, by a preponderance of the credible evidence, that Sloskey committed one of the three "freestanding offenses" enumerated in the harassment statute, with the requisite intent. N.J.S.A. 2C:33-4; State v. Hoffman, 149 N.J. 564, 576, 695 A.2d 236 (1997). N.J.S.A. 2C:33-4 provides that a person commits the petty disorderly persons offense of harassment if, with purpose to harass another, he or she:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or in any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
The parties testified as to how their relationship ended, when it ended and why it ended. They further testified as to their contact after the relationship terminated, particularly in December 2004. Franklin testified that Sloskey phoned him numerous times during the day and night, "camped" outside his house, and harassed Beal. Sloskey denied this, stating that she only contacted Franklin on a few occasions, that Franklin initiated several of their conversations and gave her mixed signals about their relationship, and that she was upset about her pregnancy and their ensuing discussions. The trial judge found the relationship had indeed ended and that the parties no longer wished to have contact. He did not, however, make *1119 a finding of credibility or find that Sloskey committed the predicate act of harassment or, for that matter, any other act of domestic violence. The sole finding on which the trial judge entered an FRO against Sloskey was "there may be harassment." The unstated basis was Sloskey's tacit consent to the restraints. That is clearly insufficient under the law.
Moreover, the procedure resorted to by the trial court did not afford Sloskey an opportunity to attempt to cross-examine Franklin, and it is clear she was unaware of her right to do so. This was also a deficiency in the process. Peterson v. Peterson, 374 N.J.Super. 116, 863 A.2d 1059 (App.Div.2005). We understand that in a pro se trial a judge often has to focus the testimony and take over the questioning of the parties and witnesses. That should be done in an orderly and predictable fashion however, and not at the expense of the parties' due process rights.
We are satisfied the record does not establish any more than a dispute between a couple in the midst of a breakup, disagreeing over the future of their unborn child. The facts do not reveal that Sloskey did or said anything with a purpose to harass, annoy or alarm Franklin, which finding is integral to a determination of harassment. Hoffman, supra, 149 N.J. at 576-77, 695 A.2d 236. There is no past history of domestic violence. Cesare, supra, 154 N.J. at 405, 713 A.2d 390. Accordingly, we vacate the FRO against Sloskey.
Reversed on both appeals.
NOTES
[1] The appendix contains a domestic violence complaint/TRO in the matter of Sloskey v. Franklin, incorrectly captioned Municipal Court of Haddon Heights Borough. The complaint contains a paraphrase of an offhanded comment made by Sloskey during trial of unidentified date, which was attributed to October 14, 2004 and was designated as the criminal offense of "terroristic threats," signed "per [the Family Part judge]" dated December 23, 2004, and the TRO is signed by the Family Part judge on January 3, 2005. The FRO signed by the Family Part judge following the hearing on December 23, 2004 states that it considered Sloskey's complaint dated January 4, 2005.