# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0870-17T2

Ra.T.,

    Plaintiff-Respondent,

v.

Ro.T.,

    Defendant-Appellant.

_____

Submitted January 28, 2019 – Decided February 25, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-0605-18.

Jacobs & Barbone, PA, attorneys for appellant (Louis M. Barbone and Joel S. Juffe, on the briefs).

Rutgers Domestic Violence Clinic, Rutgers Law, attorneys for respondent (Victoria L. Chase, of counsel and on the brief; Keisha Bishop, Matthew Nagel, and Anthony Scaringelli, on the brief).

PER CURIAM

Following trial, the Family Part judge entered a final restraining order (FRO) pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. The FRO reflected the judge's conclusion that defendant Ro.T. had committed an act of domestic violence, harassment, N.J.S.A. 2C:33-4, against his eighteen-year-old daughter, Ra.T. (Roberta), on August 14, 2017.[1]

Roberta's original complaint alleged defendant "pushed" her upon entering her home. The complaint also stated there were "multiple unreported incidents . . . in the past," and that Roberta feared her father. Two weeks later, Roberta appeared before a domestic violence hearing officer to amend the complaint after "talk[ing] to [her] attorney," who "said to go into more detail." Roberta then told the hearing officer about the August 14 incident in greater detail, as well as some details of other previously unreported incidents.

At trial, Roberta testified that she and her mother, brother, and sister left the home in 2013 because of domestic violence. They returned when her mother, R.T. (Roxanne), and defendant attempted to reconcile. One month later, Roxanne obtained a restraining order and defendant was required to leave the

---

[1] We use fictitious names to protect the identity of the victim and for the ease of the reader.

A-0870-17T2

home. On August 14, defendant unexpectedly arrived at the house to work outside because he and Roxanne were trying to sell the house.

Defendant was there for a while, apparently left, and returned. Roberta testified that as he entered, defendant, who was carrying a box, "put his elbow up and . . . rammed [her] with the box . . . ." She fell backwards and hit her back on stairs. Roberta did not tell her mother because she feared defendant would "try to do something if [she] . . . said anything." Defendant stayed for about one hour and did not leave until Roxanne threatened to call the police. Roberta said that defendant, who did not have a key to the home, would sometimes come to the house when she was there alone and bang loudly on the door. She would not let him in out of fear. Roberta described incidents in the past, where defendant choked her brother and shoved her mother. Roberta said that defendant "pushed past [her]" in 2014, causing her to be "sore for a long time." Roberta reiterated her fear of defendant.

Roxanne testified about her separation from defendant in 2013.[2] On August 14, she told defendant to leave because he was "getting loud and saying

---

[2] Prior to Roxanne's testimony, Roberta's counsel advised the judge that Roxanne and defendant were "going through a divorce," and while there was not a current FRO in effect, Roxanne had had "several temporary's [sic] against him." During her testimony, Roxanne stated she could not remember how many

A-0870-17T2

degrading things to [Roberta] . . . ."  Additionally, a friend of Roxanne's testified that the family stayed with her in 2013 for five months because they were in fear of defendant.

Defendant, who appeared pro se, denied pushing or shoving Roberta.  He said Roxanne and Roberta knew he was coming to the house on August 14 to cut the grass because he sent a text message, which he showed the judge.  After he finished, he left to purchase some food and returned with a box in his hands.  Defendant, Roberta and Roxanne ate dinner together. Defendant denied physically assaulting any members of the family, but admitted that he and Roxanne argued over the impending divorce proceedings, his concern about Roxanne's current paramour, and defendant's perceived threat that the man posed to defendant's daughters.

Defendant's thirty-year old son, Roberta's older brother, testified that his father never choked him and never assaulted any of the children.  He directly contradicted Roberta's testimony that defendant threatened to shoot another son and alluded to Roberta's frequent fabrications.

---

restraining orders she had sought against defendant, but it might have been "two or three."

A-0870-17T2

Finally, R.T. (Rhonda), defendant's daughter and Roberta's sister, also debunked the claim that defendant threatened to shoot his son. Rhonda said Roxanne wanted a "break from [defendant]" and "would try and get all of us to be mad at him and get us to all come in court and testify against him to say that we didn't feel safe with him there just because she wanted him out of the house." On cross-examination, Rhonda confirmed that Roxanne had multiple restraining orders entered against defendant.

In summation, Roberta's attorney highlighted the "multiple temporary restraining orders issued against [defendant] by [Roxanne]." In rebuttal comments, counsel reiterated that defendant had "three restraining orders" against him in the past.

The judge found Roberta and Roxanne to be credible witnesses. In reviewing their testimony, the judge noted that defendant chose not to cross-examine either. The judge also noted that defendant had "shoved" Roxanne and "slammed" his son in the past, and that Roxanne had obtained three prior restraining orders against defendant.

Turning to the defense case, the judge found the text messages only said defendant was willing to cut the grass, but not that he was coming over on August 14 to complete the task. Considering defendant's demeanor, the judge

found his testimony about "never touching and never banging into [Roberta] . . . [was] not true." The judge also found the testimony of Rhonda lacked credibility, and made no credibility determination for her brother.

The judge concluded defendant committed an act of harassment in that he "did subject his daughter to either shoving or other offensive touching . . . ."[3] The judge continued:

> I've evaluated the previous history of domestic violence, including [Roxanne's] testimony of three prior temporary restraining orders, and . . . [Roberta's] testimony as to the acts of domestic violence . . . that she saw against her brothers and I find that there is an existence of immediate danger to persons or property . . . and [an FRO] is necessary to protect [Roberta] from future abuse.

He entered the FRO and this appeal followed.

Defendant argues that the judge's finding there was a prior history of domestic violence between the parties was contrary to the evidence. He also contends there was insufficient evidence his conduct amounted to harassment, and the issuance of an FRO was not necessary to protect Roberta from future

---

[3] There is an apparent error in the transcript, which cites the offense as "2C:34-(b)." We assume the judge found a violation of N.J.S.A. 2C:33-4(b), which provides that "a person commits a petty disorderly persons offense if, with purpose to harass another, he . . . [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so[.]"

acts of domestic violence.  See Silver v. Silver, 387 N.J. Super. 112, 127 (App. Div. 2006).

We have considered these arguments in light of the record and applicable legal standards.  We reverse and remand for a new hearing before a different judge.

Our review of the judge's factual findings is limited.  "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding."  Cesare v. Cesare, 154 N.J. 394, 413 (1998).  This "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"  Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).  "On the other hand, where our review addresses questions of law, a 'trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles.'"  N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)).

In R.G. v. R.G., we held that "[a]lthough N.J.S.A. 2C:25-29(a)(1) permits the introduction of evidence of the 'previous history of domestic violence,' it does not authorize introduction of evidence regarding a defendant's past

altercations with others." 449 N.J. Super. 208, 222 (App. Div. 2017). Evidence of a defendant's prior conduct toward other family members is not admissible under the Act unless it "meet[s] the test for admission as provided by our Rules of Evidence." Ibid. (citing N.J.R.E. 101 to 1103). In proceedings under the Act, evidence of the defendant's prior bad acts directed toward someone other than the plaintiff is admissible pursuant to N.J.R.E. 404(b) if it satisfies the four-prong standard outlined by the Court in State v. Cofield, 127 N.J. 328 (1992).[4] Id. at 221.

Here, as in R.G., the judge never analyzed whether Roberta's testimony regarding defendant's prior abusive conduct toward other family members, or Roxanne's testimony about prior conduct that led to the issuance of three temporary restraining orders in the past, was admissible under the Cofield analysis. Nevertheless, in judging the credibility of plaintiff and her mother, as well as deciding whether plaintiff demonstrated the continuing need for an FRO under Silver's second prong, the judge credited allegations of defendant's past

---

[4] N.J.R.E. 404(b) excludes "evidence of other crimes, wrongs, or acts . . . to prove the disposition of a person in order to show that such person acted in conformity therewith." The evidence may be admitted "for other purposes" as provided by the Rule. Under Cofield, the evidence of prior bad acts must be "relevant to a material issue"; "similar in kind and reasonably close in time to the offense charged"; "clear and convincing"; and its "probative value must not be outweighed by its apparent prejudice." 127 N.J. at 338.

conduct toward family members other than plaintiff. We conclude that the admission of this evidence, without conducting the proper analysis, suggested defendant was predisposed to "a pattern of abuse," R.G., 449 N.J. Super. at 223, contrary to the limits of admissible evidence under N.J.R.E. 404(b), and had the clear capacity to bring about an unjust result. R. 2:10-2. We therefore vacate the FRO.

When a trial court fails to conduct the required Cofield analysis, we may conduct our own plenary review de novo. State v. Lykes, 192 N.J. 519, 534 (2007). However, we refuse to do so in this case, primarily because of the diverging accounts regarding these allegations of prior bad acts committed by defendant. On the record presented, for example, we cannot decide whether plaintiff proved by clear and convincing evidence that defendant had assaulted his son on a prior occasion, particularly since defendant's son testified and denied his sister's account. In short, de novo analysis is impossible.

The issue becomes, therefore, whether without this inadmissible 404(b) evidence, there was otherwise substantial credible evidence to support the judge's findings and conclusions. R.G., 449 N.J. Super. at 223. The inadmissible 404(b) testimony so permeated the proceedings that it is impossible to determine whether the judge's credibility findings, for example, were

impermissibly tainted.  We therefore are compelled to remand the matter to the Family Part to conduct another hearing on plaintiff's complaint in accordance with the standards we have discussed.  "Because the trial court previously made credibility findings, we deem it appropriate that the matter be assigned to a different trial court."  R.L. v. Voytac, 199 N.J. 285, 306 (2009).

We address one further issue to provide guidance if the matter is tried again.  The judge never explicitly concluded that defendant acted with the purpose to harass Roberta, a necessary element of the offense.  See N.J.S.A. 2C:33-4.  As the Court has cautioned when construing other parts of the harassment statute, "[a]lthough a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the [defendant]'s conscious object was," in this case, to strike, kick, shove or otherwise offensively touch Roberta as he entered the home carrying a box of food.  J.D. v. M.D.F., 207 N.J. 458, 487 (2011) (citing State v. Hoffman, 149 N.J. 564, 577 (1997)).  "Moreover, when evaluating whether an individual acted with the requisite purpose, our courts must be especially vigilant in cases involving, as do many domestic violence disputes, the interactions of a couple in the midst of a breakup of a relationship."  Ibid.  (citing Franklin v. Sloskey,

10

385 N.J. Super. 534, 544 (App. Div. 2006)). Here, the record is replete with descriptions of the ongoing marital disharmony in this family.

In the event the matter is tried again, the judge should carefully consider and decide not only whether defendant subjected Roberta to the conduct proscribed by N.J.S.A. 2C:33-4(b), but also whether defendant acted with the purpose to harass his daughter.

Reversed and remanded for a new trial in accordance with this opinion. We vacate the FRO, but the temporary restraining order shall remain in place pending further proceedings in the Family Part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0870-17T2