# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4839-17T1

D.C.,[1]

     Plaintiff-Respondent,

v.

M.M.,

     Defendant-Appellant.

_____

Submitted March 27, 2019 – Decided April 16, 2019

Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-1205-18.

Law Offices of Darren C. O'Toole, LLC, attorneys for appellant (Darren C. O'Toole, Alexa N. Joyce, and Carrie A. Smith, of counsel and on the briefs).

Starkey, Kelly, Kenneally, Cunningham & Turnbach, attorneys for respondent (Alton D. Kenney, of counsel; Clifford P. Yannone, on the brief).

---

[1] We use initials to preserve confidentiality in accordance with R. 1:38-3(d)(9).

PER CURIAM

Defendant appeals from a May 25, 2018 final restraining order (FRO). Defendant argues the FRO is not supported by adequate, substantial, or credible evidence. Defendant also asserts the judge erred in refusing to grant his request to adjourn the trial. We reverse and vacate the FRO because there was insufficient evidence presented at trial to establish an act of harassment or a need for an FRO.

The facts in this matter are undisputed. In 1982, the parties dated for approximately one year. In 1983, after the relationship ended, defendant attended a party at plaintiff's home. According to plaintiff, defendant assaulted her at the party, leaving visible marks and bruises on her neck, breasts, and face.

Thereafter, the parties had no contact until sometime between 2008 and 2010, when defendant sent an email to plaintiff. In that email, defendant hoped plaintiff was "doing ok[] [and he] just wanted to reach out . . . ." Plaintiff replied to defendant's email, instructing defendant to never contact her.

On April 2, 2018, defendant sent a Facebook message to plaintiff. The message asked plaintiff, "[w]ould it be possible for us to talk? I'm profoundly sorry for what I did and would very much like to talk to you."

A-4839-17T1

Upon receipt of the Facebook message, plaintiff sought a temporary restraining order (TRO) from the local police department. The police declined to issue a TRO. Plaintiff appealed the denial of the municipal TRO to the Superior Court. On April 3, 2018, a family part judge issued a TRO and scheduled the matter for trial seven days later.

At plaintiff's request, the trial was adjourned twice. In granting plaintiff's second adjournment request, the judge scheduled the trial for May 25, 2018 and stated there would be no further adjournments.

Sometime thereafter, defendant learned a relative in North Carolina had died. A memorial service was scheduled for May 25 in North Carolina. Defendant had agreed to drive his elderly aunt from New Jersey to the memorial service.

On May 22, defendant requested an adjournment of the trial. Plaintiff did not object to defendant's request; however, the judge denied the adjournment. At the start of the trial on May 25, defendant's counsel again sought an adjournment and the judge denied the request.

In denying the adjournment, the judge explained the case was fifty-two days old, making the matter twice as old as the suggested judicial guidelines for

A-4839-17T1

disposition of domestic violence matters.  The judge also stated the parties were advised no further adjournments would be granted.

Because defendant was not present at the trial, the judge took testimony from plaintiff and her witnesses.  At the conclusion of the one-sided testimony, the judge granted the FRO.

In explaining his reasons in support of the FRO, the judge noted defendant's absence at trial, stating "defendant by not being here is unable to testify and is choosing not to testify.  And [t]he [c]ourt can make a negative inference with respect to his absence and his decision not to be here . . . ."[2]  The judge acknowledged that defendant's intent in sending the April 2018 Facebook

---

[2] The judge's drawing of an adverse inference against defendant after denying his requests to adjourn the trial was an abuse of discretion.  See H.E.S. v. J.C.S., 175 N.J. 309, 331 (2003) (advising "an unfavorable inference should not be drawn" where a defendant elects not to testify during an FRO hearing); N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 278 (App. Div. 2018) (Koblitz, J., concurring) (suggesting a defendant should not be allowed to invoke the right to remain silent in an abuse and neglect case because, unlike a domestic violence case, the protection of the innocent child is paramount).  Here, defendant did not refuse to testify.  See State, Dep't of Law & Public Safety, Div. of Gaming Enf't v. Merlino, 216 N.J. Super. 579, 587 (App. Div. 1987) (holding a court may draw an adverse inference where a party refuses to testify in a civil matter).  Defendant sought to adjourn the trial because he wanted to testify but was unable to appear on the scheduled trial date due to an unavoidable scheduling conflict.

message may have been innocent, but because defendant was absent for the trial, the judge presumed defendant had the intent to harass plaintiff.

After summarizing the testimony, the judge concluded defendant committed acts of harassment under N.J.S.A. 2C:33-4(a) and (c). The judge found the 1983 assault, the email sent to plaintiff two decades later, and the April 2018 Facebook message, were intended to harass plaintiff. The judge determined plaintiff was alarmed and annoyed by defendant's contacts.

The judge then considered whether an FRO was necessary to protect plaintiff from further abuse. In determining there was a history of domestic abuse, the judge relied on plaintiff's testimony describing an assault committed by defendant in 1983. No other incidents of violence were recounted by plaintiff during her testimony or set forth in her domestic violence complaint.

The judge acknowledged there was no testimony to support a finding of immediate danger to plaintiff's person or property. However, the judge concluded that based on "the unrebutted testimony of [plaintiff], no evidence as to why these emails have come forward today [shows] any other purpose besides to harass. I do find that the Silver[3] analysis is satisfied in this context by a preponderance of the credible evidence."

_____

[3] Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006).

On appeal, defendant argues the family court judge erred in: (1) denying his adjournment request; (2) finding defendant committed harassment; and (3) determining an FRO was necessary to protect plaintiff from further abuse.

Our review of decisions issued by judges assigned to the Family Part is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A trial judge's findings should be affirmed if supported by "adequate, substantial, [and] credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court fact[-]finding." Id. at 413.

We first address whether the judge erred in denying defendant's request to adjourn the trial. A party to a civil proceeding is entitled to a fair hearing with the protections of due process. J.D. v. M.D.F., 207 N.J. 458, 478 (2011). "[C]ourts have broad discretion to reject a request for an adjournment that is ill founded or designed only to create delay, but they should liberally grant one that is based on an expansion of factual assertions that form the heart of the complaint for relief." Id. at 480.

We recognize the challenges facing a trial court's disposition of matters and the desire to resolve cases expeditiously. See Berkowitz v. Soper, 443 N.J.

6

Super. 391, 406–07 (App. Div. 2016). However, we have also cautioned that the essential purpose of the court is to "provide a disinterested forum for the just resolution of disputes . . . ." Ghandi v. Cespedes, 390 N.J. Super. 193, 198 (App. Div. 2007) (quoting Audubon Volunteer Fire Co. No. 1 v. Church Constr. Co., 206 N.J. Super. 405, 406 (App. Div. 1986)); see also Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005). "[C]ourts exist to serve the litigants, not the other way around. Cases should be won or lost on their merits and not because litigants have failed to comply precisely with particular court schedules, unless such noncompliance was purposeful and no lesser remedy was available." Connors v. Sexton Studios, Inc., 270 N.J. Super. 390, 395 (App. Div. 1994).

Here, defendant made a reasonable request for an adjournment because he had to attend a memorial service in North Carolina for a family member. Based on the age of the case and the matter being over-goal for resolution of a domestic violence matter, the judge denied the request even though plaintiff did not object. We note the case aged, in part, because the judge granted plaintiff's two prior adjournment requests. Because the denial of the adjournment was not based on any finding that defendant's request was for purposes of intentional delay or without reason, the request should have been granted.

The Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, protects victims of domestic violence. To obtain an FRO under the PDVA, a party must satisfy the two prong test set forth in Silver. Under Silver, the trial court must find: (1) defendant committed a predicate act within N.J.S.A. 2C:25-19(a); and (2) an FRO is necessary to protect the victim from immediate danger or to prevent further abuse. Silver, 387 N.J. Super. at 125-27.

We first consider whether the judge erred in finding defendant committed the predicate act of harassment. A person is guilty of harassment if he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

A finding of harassment requires proof of an intent or purpose to harass. State v. Hoffman, 149 N.J. 564, 576-77 (1997). An assertion by a plaintiff that he or she felt harassed is a subjective belief and insufficient to prove a purpose or intent to harass. J.D., 207 N.J. at 484.

In this case, the judge found defendant violated N.J.S.A. 2C:33-4(a) and (c). However, the judge did not find defendant's email or Facebook message to be coarse, anonymous, or made at an extremely inconvenient hour. Nor did the judge find defendant's efforts to communicate with plaintiff amounted to a "course of alarming conduct" or were "repeatedly committed acts with the purpose to alarm or seriously annoy." Isolated communications that occurred twenty-five and thirty-five years after the parties last saw one another cannot be considered harassment under the statute. Based on our review of the record, the judge's finding of harassment is not supported by the evidence.

A judge is also required to determine whether the victim satisfied the second prong under Silver. Silver, 387 N.J. Super. at 127. The court must "evaluate the factors in N.J.S.A. 2:25-29(a)(1) to –(6) to determine whether an FRO is warranted to protect the victim from an immediate danger or to prevent further abuse." A.M.C v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016).

Here, the judge failed to make the requisite findings that an FRO was necessary to protect plaintiff from further abuse or violence.[4] Plaintiff did not testify that she feared defendant. The prior incident of domestic violence

---

[4] The issuance of an FRO has serious consequences and should not be issued lightly. See Franklin v. Sloskey, 385 N.J. Super. 534, 541 (App. Div. 2006).

A-4839-17T1

occurred in 1983 and there were no other incidents after 1983. More than twenty-five years elapsed before defendant's first minimal contact and then ten more years passed prior to defendant's second communication. Plaintiff cannot show she was in immediate danger or subject to abuse. Under these circumstances, plaintiff has not met her burden to justify the issuance of the FRO. At best, plaintiff expressed exasperation at defendant's attempts to communicate with her. There is insufficient evidence in the record to support the judge's finding that defendant poses a danger to plaintiff.

Having reviewed the record, we are satisfied the evidence was insufficient for the entry of the FRO and the FRO must be vacated.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4839-17T1