**RECORD IMPOUNDED**

### _NOT FOR PUBLICATION WITHOUT THE_
### _APPROVAL OF THE APPELLATE DIVISION_

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0109-20

M.C.S.,[1]

    Plaintiff-Respondent,

v.

J.C.K.,

    Defendant-Appellant.

_____

Submitted April 28, 2021 – Decided May 20, 2021

Before Judges Rose and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2957-20.

Lauren A. Wimmer, attorney for appellant.

Klineburger & Nussey, attorneys for respondent (D. Ryan Nussey and Carolyn G. Labin, on the brief).

PER CURIAM

---

[1] We use initials to protect the plaintiff's confidentiality. R. 1:38-3(d)(10).

Defendant J.C.K. appeals from an August 13, 2020 final restraining order (FRO) issued in favor of his ex-girlfriend, plaintiff M.C.S., under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate acts of harassment, N.J.S.A. 2C:33-4(b) and 2C:25-19(a)(13), and simple assault by physical menace, N.J.S.A. 2C:12-1(a)(3) and 2C:25-19(a)(2). We affirm the grant of the FRO insofar as it is based on the predicate act of harassment.

I.

The facts were established at a one-day bench trial. Plaintiff was self-represented and testified; she did not introduce any evidence at trial. Defendant was represented by counsel. He did not testify, but introduced in evidence text messages between the parties, a copy of the temporary restraining order (TRO), and plaintiff's statement to police in the present matter.

Plaintiff and defendant began a dating relationship in the summer of 2018, while defendant was married to another woman and resided in Pennsylvania – about a two-hour drive from plaintiff's apartment. The parties' two-year relationship was "on and off"; it can best be described as volatile.

During an argument via text messages in July 2019, defendant forwarded a video of himself "smashing" gifts he received from plaintiff "with a hammer."

In early autumn 2019, defendant texted plaintiff, threatening to "message [her] work" if she "didn't pick up the phone or if [sh]e didn't explain to him why [she] had slept with someone else when [they] weren't together." In December 2019, defendant began messaging and "friend requesting" other men whom plaintiff "followed" on social media.

In February 2020, defendant texted plaintiff "at least" 100 times in one day between 7:00 p.m. and 4:00 a.m., insulting her and demanding she spend time with him, not her friends. On another day in April 2020, defendant texted plaintiff more than 100 times, "calling [her] a whore" and "a slut." Defendant "demanded" plaintiff's location and "accus[ed her] of sleeping with other people."

On Easter Sunday 2020, while plaintiff was spending time with her family, defendant again sent numerous texts demanding to know her location and whom she was with. Plaintiff feared defendant because he owned a gun and repeatedly said that plaintiff "made him want to blow his brains out." She also told the judge defendant had mental health issues.

The parties' dating relationship ended in May 2020. But the parties continued texting each other "amicably" through June 6, 2020. The next day, plaintiff texted defendant that she was "in a bad mood" and "need[ed] space."

A-0109-20

Despite plaintiff's protestations, on June 8, 2020, defendant called and messaged plaintiff repeatedly. Dissatisfied with plaintiff's non-responses, defendant knocked on her apartment door around 11:00 a.m., "unannounced and uninvited," without utilizing her building's buzzer system. Observing defendant through the peephole and without opening the door, plaintiff asked defendant to leave, but he refused. After "a couple of minutes," defendant agreed to meet plaintiff in "public" by his vehicle. Plaintiff "checked the peephole" to confirm defendant had left the building. But when plaintiff opened the door, defendant "jumped out from the side of the hallway." Plaintiff attempted to block defendant's entry into her apartment, but "there was a scuffle." Defendant "shoved" plaintiff, "us[ing] the force of his body to enter the apartment."

Plaintiff's friend and off-duty police officer, S.P., was inside the apartment and separated the parties. Defendant was "screaming" and "calling [plaintiff] a slut" and "a whore." He accused plaintiff of "sleeping with" S.P. and demanded to know why S.P. was present in her apartment. Defendant falsely stated he was plaintiff's fiancé and threatened to "beat the shit out of" S.P.

Plaintiff agreed to speak with defendant "for a few minutes" while S.P. stepped outside the apartment. Defendant tried to "hug, . . . touch . . . [and] kiss"

A-0109-20

plaintiff, who told defendant to "get away" from her. Defendant told plaintiff he was "in love" with her and desired to marry her.

On cross-examination, plaintiff acknowledged she texted defendant after he left her apartment. Plaintiff read into the record the message she sent at 2:32 p.m., summarizing the emotional pain defendant caused her. The text message stated: "I'm sure if I continue to let you, you'd never stop treating me this way and hurting me." Plaintiff expressed remorse "for everything," stating: "I really did love you." Plaintiff earlier testified, "at th[at] point" she felt the relationship was "toxic."

Around a half-hour later, defendant sent a "plate of forty [chicken] wings" to plaintiff's apartment. Plaintiff told the judge she had previously mentioned to defendant that S.P. "liked to eat wings." Plaintiff hesitated to call the police because while she was "under . . . stress," she had signed a non-disclosure agreement at defendant's "direction" so she could "be with" him.

That evening, plaintiff nonetheless filed a domestic violence complaint, alleging defendant committed the offenses of burglary, harassment, and assault earlier that day. Addressing the parties' prior domestic violence history, the complaint cited "two harassment reports" and two TRO applications. A municipal judge granted the TRO and defendant was served that night. The

A-0109-20

following morning – at 6:00 a.m. – defendant emailed plaintiff. Thereafter, a criminal complaint was filed against defendant for violating the TRO.

Following argument on August 23, 2020, the trial judge issued a cogent oral decision, squarely addressing the issues raised in view of the governing law. The judge made detailed factual and credibility findings. As a few notable examples, the judge found plaintiff made "good eye contact"; her tone and demeanor were "genuine"; and her responses were not "at all equivocal" or hesitant. The judge elaborated:

> [Plaintiff's] testimony was by and large concise, and it actually seemed consistent with the various text messages she was asked to testify to.
>
> I found her to be candid. I don't think she embellished any of her testimony. . . . . [Plaintiff] gave good, clear explanation[s] as to why she did certain things or didn't do certain things in terms of reporting to the police some seven hours after the incident occurred, but three hours after receiving a further communication . . . .

The trial judge therefore concluded the events that underscored plaintiff's present domestic violence complaint, and the prior history of domestic violence, occurred as plaintiff described them. The judge concluded plaintiff established by a preponderance of the credible evidence the predicate acts of harassment by offensive touching, N.J.S.A. 2C:33-4(b) and 2C:25-19(a)(13); and simple

A-0109-20

assault by physical menace N.J.S.A. 2C:12-1(a)(3) and 2C:25-19(a)(2).[2]  The judge also determined that entry of the FRO was required "to protect plaintiff from future abuse."  This appeal followed.

II.

On appeal, defendant challenges the trial judge's conclusion that plaintiff satisfied both prongs of the well-established test enunciated in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).  Defendant further contends the judge impermissibly assisted plaintiff, leading her to testify about prior incidents that were not alleged in the complaint, thereby violating his right to due process.  We disagree.

Our scope of review is limited when considering an FRO issued by the Family Part following a bench trial.  See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013).  "[W]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings."  Ibid. (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).  We will not disturb the court's factual findings and legal conclusions "unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and

---

[2]  Without elaborating, the trial judge correctly determined plaintiff failed to prove burglary as charged in the domestic violence complaint.

reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (internal quotation marks omitted).

Deference is particularly appropriate where, as here, the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Ibid. It is axiomatic that the judge who observes the witnesses and hears the testimony has a perspective the reviewing court simply does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citation omitted).

When we address questions of law, however, a "trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (internal quotation marks omitted). The appropriate standard of review for conclusions of law is de novo. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. See Silver, 387 N.J. Super. at 125-27. Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. The trial court should make

this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). As long as the court "at least consider[s] that factor in the course of its analysis[,]" it "is not obligated to find a past history of abuse before determining that an act of domestic violence has been committed in a particular situation . . . ." Cesare, 154 N.J. at 402.

Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). Those factors include – but are not limited to – "[t]he previous history of domestic violence between the [parties], including threats, harassment and physical abuse." N.J.S.A. 2C:25-29(a)(1).

## A.

In relevant part, a person is guilty of harassment if "with the purpose to harass another," the person "[s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so." N.J.S.A. 2C:33-4(b). "A

finding of a purpose to harass may be inferred from the evidence presented. Common sense and experience may also inform a determination or finding of purpose." State v. Hoffman, 149 N.J. 564, 577 (1997) (citations omitted). "Although a purpose to harass can be inferred from a history between the parties, . . . that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy . . . ." J.D., 207 N.J. at 487 (citing Hoffman, 149 N.J. at 577). Conversely, "ordinary domestic contretemps" do not constitute harassment. Id. at 475 (citing Corrente v. Corrente, 281 N.J. Super. 243, 249-50 (App. Div. 1995)).

Defendant contends the judge failed to "address whether the evidence established that [defendant] acted with the purpose to harass [plaintiff]." He claims he simply "wanted to talk" to plaintiff when he attempted to enter her apartment. Defendant's argument is unavailing.

Referencing plaintiff's testimony, the judge recounted the parties' interactions leading to defendant's attempt to enter the apartment on June 8, 2020, including: "the series of text messages between the parties"; plaintiff's ultimate message that she "needed her space"; and defendant's agreement "to leav[e] the apartment complex" and wait outside for plaintiff – only to remain out of sight of the peephole and "jump[] out in front of her" when she opened

the door. The judge then found defendant "physically push[ed] into the apartment, pushing against [plaintiff] and then grabbing her by . . . the sweatshirt," thereby necessitating S.P.'s intervention. The judge therefore concluded defendant committed harassment by "shoving or offensive touching." Pursuant to our de novo review, S.D., 415 N.J. Super. at 430, we discern no basis to disturb the judge's legal conclusion that defendant committed harassment. Defendant's "purpose to harass" plaintiff can be reasonably inferred from the evidence presented, Hoffman, 149 N.J. at 577, and the parties' history, J.D., 207 N.J. at 487.

Pursuant to N.J.S.A. 2C:12-1(a)(3), "a person is guilty of [simple] assault if the person . . . [a]ttempts by physical menace to put another in fear of imminent serious bodily injury." N.J.S.A. 2C:11-1(b) defines "serious bodily injury" as "bodily injury[,] which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Citing plaintiff's testimony that "she was scared," the trial judge found the same conduct that constituted harassment also "satisfie[d] attempts by physical menace." According to the judge, defendant's "placing his body and touching [plaintiff] and then grabbing her" placed "her in fear of . . . bodily injury."

11

Defendant contends the "court erred as a matter of law in concluding that [N.J.S.A. 2C:12-1(a)(3)] simply required a fear of bodily injury." He further argues: "The record does not support a finding that [he] placed [plaintiff] in fear of imminent serious bodily injury and this [c]ourt should vacate the FRO on that basis."

As only one predicate act is required to find domestic violence, see Silver, 387 N.J. Super. at 125, we need not address whether defendant's conduct also constituted assault by physical menace especially here, where the judge found defendant's conduct on June 8, 2020 constituted both predicate acts. Notably, because the injury that is necessary under subsection (a)(3) of the simple assault statute is greater than that which suffices under section (b) of the harassment statute, harassment is a lesser-included offense of a simple assault by menacing. See State v. Berka, 211 N.J. Super. 717, 721 (Law Div. 1986).

Nor do we find any merit to defendant's contentions that plaintiff failed to demonstrate the need for an FRO. Defendant asserts the parties' prior conduct merely constituted "ordinary domestic contretemps." He further asserts the trial judge "afford[ed] plaintiff a relaxed burden of proof due to her status" as "an eggshell plaintiff," who "cried throughout the proceedings and did not have the will to terminate the relationship with" defendant. We are unpersuaded.

12

Recounting the prior history between the parties, the trial judge found the series of text messages from defendant evidenced "classic issues of power and control in [this] situation where there's domestic violence, where one party wishes to exercise physical control over another party." The judge correctly addressed the factors set forth in N.J.S.A. 2C: 25-29(a)(1) to (6), acknowledging the circumstances here did not "fit . . . squarely within" that framework. Importantly, however, the judge found "a previous act of domestic violence between the parties, which is harassment" under factor (1). Moreover, the judge expressly determined the conduct at issue went "beyond" that which is "normal (inaudible) between parties, who are in a dating relationship." Accordingly, the judge concluded plaintiff needed the FRO "to protect her from future events, future danger."

Unlike cases where we have found conduct to constitute "ordinary domestic contretemps," we do not find defendant's prior conduct to be "rude" behavior the Legislature did not intend to criminalize. See J.D., 207 N.J. at 483; see also Corrente, 281 N.J. Super. at 250. That conduct was evidenced by the plethora and frequency of text messages often at odd hours, with demands about plaintiff's whereabouts and the company she kept; accusations of her promiscuity; and name-calling. And that conduct constituted a "pattern of

13

abusive and controlling behavior," which is a "classic characteristic of domestic violence." Silver, 387 N.J. Super. at 128.

B.

We turn to defendant's overlapping assertions that his right of due process was violated. Defendant contends plaintiff's domestic violence complaint and TRO failed to allege with specificity prior acts of domestic violence, which were improperly elicited through the trial judge's voir dire of plaintiff. Again, we are not persuaded.

In view of the current COVID-19 pandemic, New Jersey courts have striven to continue operations by conducting certain proceedings, including domestic violence trials, remotely. As we have recently observed: "Trial courts and staff have undertaken a herculean effort in rising to this unprecedented challenge." D.M.R. v. M.K.G., ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 2).

Prior to the start of trial in the present matter, the trial judge met that challenge by ensuring the parties immediately exchanged outstanding discovery electronically and affording both sides the opportunity to review that discovery in virtual "breakout rooms." Following an eighty-minute recess, the judge

inquired whether an adjournment was necessary based on the discovery received. Both parties indicated they were prepared to proceed.

Relying on our decision in J.F. v. B.K., 308 N.J. Super. 387 (App. Div. 1998), defendant contends the judge erroneously considered evidence outside the domestic violence complaint. Defendant's reliance on J.F. is misplaced.

In J.F., we held "[i]t constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." Id. at 391-92. As the predicate act, the complaint in J.F. only alleged "[l]eaving notes on [plaintiff's] vehicle while it was parked at her work place," and a history of domestic violence whereby defendant "'[a]ssaulted plaintiff by slapping her in [the] face' on a prior occasion for which no date was specified." Id. at 389. At trial, the plaintiff testified the defendant had spat at her, made harassing telephone calls, and had driven past her house repeatedly. Ibid. The trial court found defendant had committed acts of domestic violence based on the conduct to which the plaintiff testified at trial rather than the conduct alleged in her present and prior domestic violence complaints. Id. at 391.

A-0109-20

Unlike J.F., the trial judge here did not base his decision to issue an FRO solely on other accusations not listed in the complaint, ignoring the sole reason the restraining order was sought in the first place. Instead, the judge considered the totality of the circumstances and determined that defendant's actions at plaintiff's apartment on June 8, 2020, in view of the series of text messages that led to that unwanted visit, constituted harassment. The reference to prior harassment reports in the TRO – coupled with copies of text messages exchanged by the parties on the day of trial without objection – provided fair notice that plaintiff would testify to defendant's prior harassing conduct.

Nor do we find any error in the judge's questioning plaintiff about defendant's prior abusive text messages. A "court may examine a witness regardless of who calls the witness." N.J.R.E. 614(b). Of course, a court must avoid questioning witnesses in a manner prejudicial to the opposing party. State v. Taffaro, 195 N.J. 442, 451 (2008); see also L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 537 (App. Div. 2011) (recognizing "a trial judge must take special care to craft questions in such a manner to avoid being perceived as an advocate for any side of a dispute"). This concern is "less acute in the context of bench trials, where judges serve as fact finders and have more latitude in questioning witnesses." Taffaro, 195 N.J. at 451. In the context of domestic violence trials,

especially with pro se litigants, a court's questioning of witnesses should be done in an "orderly and predictable fashion . . . , and not at the expense of the parties' due process rights." Franklin v. Sloskey, 385 N.J. Super. 534, 543 (App. Div. 2006).

In the present matter, the trial judge elicited testimony about the allegations stated in the complaint and prior similar acts of harassing communications. Notably, only plaintiff was uncounseled, and defendant – through his attorney – introduced in evidence the text messages that underscored the parties' prior communications. We therefore are satisfied that the judge did not veer over the "line that separates advocacy from impartiality," Taffaro, 195 N.J. at 451, or deny defendant due process in examining plaintiff. See Franklin, 385 N.J. Super. at 544.

In summary, the trial judge evaluated plaintiff's testimony and the evidence admitted at trial, finding the evidence sufficient to satisfy both prongs of the Silver analysis. Given our deferential standard of review, we find no basis to disturb that determination. To the extent not specifically addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0109-20